UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

DOYLE C. ALCORN,           )
                          )
            Movant,       )
                          )
     vs.                  )     Case No. 1:11CV00111 SNLJ
                          )
UNITED STATES OF AMERICA,  )
                          )
            Respondent.    )

## MEMORANDUM AND ORDER

This case is a motion under 28 U.S. C. § 2255 to vacate, set aside or correct sentence by

Doyle C. Alcorn, a person in federal custody.  On July 13, 2010, Alcorn was found guilty by a

jury of the offense of being a felon in possession of a firearm and manufacturing marijuana and,

on October 8, 2010, this Court sentenced Alcorn to the Bureau of Prisons for a term of 20

months, a sentence within the sentencing guideline range.  Alcorn's § 2255 action, which is

based on several allegations of ineffective assistance of counsel, is fully briefed and ripe for

disposition.

## FACTS

**A.      The Indictment.**

On October 22, 2009, a Grand Jury in the Eastern District of Missouri, Southeastern

Division, returned a two-count Indictment against Doyle C. Alcorn. The Indictment alleged that

Alcorn was a previously convicted felon in possession of a firearm that affected interstate

commerce in violation of 18 U.S.C. § 922(g)(1), (Count I) and that he manufactured marijuana in

violation of 21 U.S.C. § 841(a)(1) (Count II). A copy of the Indictment is attached to this

Response as Exhibit 1. The Federal Public Defender's office was appointed to represent Alcorn.

Alcorn was arraigned on December 11, 2009. At that arraignment, Alcorn pled not guilty to the charges.

### B. Pretrial Motions.

On January 20, 2010, Alcorn filed a motion to suppress evidence and statements. A hearing was held on that motion on February 11, 2010. On April 15, 2010, United States Magistrate Judge Lewis M. Blanton issued his Report and Recommendation that Alcorn's motion to suppress evidence and statements be denied. After Alcorn objected to that Report and Recommendation, this Court adopted Judge Blanton's Report and Recommendation and denied Alcorn's motion to suppress evidence and statements. The case was set for a jury trial on July 12, 2010.

### C. Trial.

On July 12, 2010, Alcorn appeared with his attorney, Scott F. Tilsen, to begin his jury trial on the two charges made in the Indictment. The Government and Alcorn presented evidence until July 13, 2010. That evidence is summarized below.

On August 11, 2009, officers with the Missouri State Highway Patrol were using a helicopter to fly over rural areas to look for marijuana plants in Carter County. Sergeant George Falterman was in the helicopter as a spotter. Falterman worked in conjunction with other officers on the ground to locate and seize the marijuana plants which he spotted from the air. Falterman worked as a marijuana spotter in helicopters over the past for ten years. (Trial Tr. I, pp. 55 - 57)

Falterman flew over property owned by Doyle Alcorn and observed marijuana plants inside a fence near the Alcorn home. The helicopter circled to get another view of the Alcorn property. On that second pass, Falterman saw another marijuana plant growing in a pot on the

back porch of the home. Falterman contacted Patrol officers Eric Hackman and Shawn Dougherty and instructed them where to find the marijuana plants. Falterman hovered over the area until he saw the officers drive to the correct location. (Trial Tr. I, pp. 55 - 59)

Officers Hackman and Dougherty arrived at the Alcorn home and knocked on the front door. They were met at the door by Alcorn's daughter, Jessica Jones. Hackman told Jones that the officers were at the home because another officer had spotted marijuana plants growing near the house. Jones told the officers that the plants were her father's. She called her father with her personal cell phone. Alcorn answered Jones' call, whereupon Jones handed the phone to Hackman. Hackman told Alcorn that a helicopter spotter had seen marijuana plants around his home. Alcorn said that he would return home in two minutes. Shortly after that call, Doyle C. Alcorn drove up to his home and made contact with the officers. (Trial Tr. I, pp. 61 - 64)

Hackman introduced himself and asked for permission to search Alcorn's property. Alcorn agreed to the search and signed a consent to search form provided by Hackman. Hackman also gave Alcorn a Miranda warning. Alcorn agreed to speak with the officers after receiving that warning. Alcorn took the officers to his garden and pointed out two marijuana plants that were eight to twelve feet high. Alcorn showed the officers a marijuana plant on the back porch of his home and two or three other plants that were located about thirty to forty yards from his home. The officers asked Alcorn if he had any processed marijuana. Alcorn said that he did and led the officers into his home, where they found a package of marijuana in the recliner in the living room. The officers seized a package of marijuana from that recliner as well as some other marijuana drying in a laundry room. Other paraphernalia associated with the use of marijuana was seized from the home by the officers. (Trial Tr. I, pp. 64 - 68)

Alcorn spoke to Hackman and Dougherty about the marijuana found at the home and Alcorn's history of producing marijuana. Alcorn stated that around 1999, he was convicted of possessing around a pound of processed marijuana. Alcorn said that he had grown three or four plants each year for the past three to four years. During this conversation, the officers were notified that the helicopter spotter had found another patch of marijuana at another location a distance away from the Alcorn residence and that someone was attempting to burn it. The officers decided to respond to that location to prevent the destruction of evidence. Alcorn was not placed under arrest. (Trial Tr. I, pp. 68 - 71)

Before the officers left the home, Officer Dougherty told Alcorn that he would have to come back to the Alcorn home to take his fingerprints for the records. Dougherty did not have his fingerprint kit with him on that day. Dougherty went back to the Alcorn home a few days after the initial contact. Dougherty knocked on the front door and was met by Alcorn. Alcorn invited the officer in his home and Dougherty completed his fingerprint record. After that task was completed, Dougherty asked Alcorn if he had any firearms in the residence. Alcorn said that he did and that he would show them to Dougherty. Alcorn took the officer into his daughter's bedroom and pointed out a locked gun safe. Alcorn stated that there were two guns in the safe, but he did not have a key to the safe. Alcorn told the officer that he had a .410 shotgun in his bedroom closet. Alcorn then took Dougherty into Alcorn's bedroom. Alcorn walked into his bedroom, went to a closet, opened the door and took out a gun case. Alcorn opened the gun case and removed a .410 gauge shotgun and handed it to Dougherty. Dougherty examined the shotgun and gave it back to Alcorn. Dougherty decided to contact ATF Special Agent John Taylor about the firearm, since he believed that Alcorn was a previously convicted felon that was

prohibited from possessing firearms. When Dougherty left the home, he did not seize the shotgun even though he knew that Alcorn was a previously convicted felon. Dougherty made the decision to refer the investigation of the firearms case to Taylor because that is normally what he does with firearms investigations. (Trial Tr. I, pp. 93 - 100, 107, 108, 117)

On August 20, 2009, Dougherty and Taylor went back to the residence and were met by Alcorn. Alcorn invited the officers in his home. Dougherty introduced Agent Taylor to Alcorn and said that they were there to talk to him about the firearms that Dougherty had seen on his previous visit. Taylor asked about the firearms in Alcorn's daughter's room. Alcorn obtained a key and gave it to the officers. The safe was opened. The officers saw two firearms inside that safe. At that point, Taylor gave a Miranda warning to Alcorn. Those two firearms were left in the safe. (Trial Tr. I, pp. 100 - 101, 111, 119 -121)

Dougherty asked Alcorn if he still had the .410 shotgun. Alcorn said that he did and retrieved it from the same bedroom closet as where it was originally seen by Dougherty. The firearm was taken out of the case to display it to Taylor. Taylor asked how Alcorn had obtained the firearm. Alcorn stated that he had obtained it from his son-in-law and that he had paid $150 for it about a year earlier. Taylor seized the shotgun on that day. The shotgun was a Stevens, .410 gauge shotgun that was manufactured in the State of Massachusetts and affected interstate commerce prior to its discovery in Missouri. (Trial Tr. I, pp. 55,101 - 102, 121 - 123; Stipulation, ¶ 2)

After the Government rested its case, Alcorn elected to present evidence and to testify.

Alcorn admitted that he was previously convicted of a felony offense related to his possession of a pound of marijuana. Alcorn lived in his home with his daughter, Jessica Jones,

and, at times, her former husband, Ricky Jones. The Jones moved their belongings to Alcorn's home and stored them there. Alcorn said that one of the storage places for the Jones property was his walk-in bedroom closet. Alcorn said that, in August, 2009, he did not have any idea that a weapon was in that closet. Alcorn testified that he cooperated with the officers on their first visit to his home and showed them where the marijuana was. (Trial Tr. I, pp. 141 - 147)

Alcorn's recollection of his second contact with Officer Dougherty was different that Dougherty's testimony. Alcorn stated that after Dougherty obtained his fingerprints, Dougherty asked for permission to search the Alcorn home. Alcorn agreed to a search. Alcorn said that Dougherty then went into Alcorn's bedroom and asked to look in his closet. Alcorn agreed that he could do so. Alcorn walked in the closet and turned on the light. Dougherty went in the closet and found the .410 shotgun. Alcorn stated that he did not know the shotgun was in the closet until Dougherty found it. Alcorn testified that he told Dougherty that he had no idea that the firearm was in the closet. (Trial Tr. I, pp. 147 - 149)

Alcorn's recollection of his visit with ATF Special Agent Taylor was similarly different from Taylor's trial testimony. Alcorn said that Taylor asked him about the .410 shotgun. Alcorn said his response was that he had no idea that the shotgun had been there. Alcorn testified that his son-in-law had brought the shotgun with him when he moved to Carter County from Michigan. Alcorn claimed that his son-in-law was short of money and wanted to sell the gun to Alcorn. Alcorn stated that he told Taylor about this conversation and that his son-in-law wanted $150 for the gun. Alcorn said he refused the purchase, saying that he was a convicted felon and couldn't have a gun. Alcorn suggested that the son-in-law give the gun to Alcorn's daughter. (Trial Tr. I, pp. 149 - 155)

On cross-examination, Alcorn admitted that he was growing the marijuana found at his home and that he knew it was illegal to do so. Alcorn denied that he took Dougherty to the shotgun on Dougherty's second visit and reasserted that Dougherty searched his home and found the shotgun. Alcorn denied that he was the person who got the shotgun out of the closet on August 20, 2009, when Dougherty and Taylor made their visit. Alcorn stated that he had no idea how the shotgun got into the closet. Alcorn denied telling Taylor that he had purchased the shotgun from his son-in-law. (Trial Tr. I, pp. 155,164 - 166,169,170)

Ricky Jones, Alcorn's former son-in-law, testified during Alcorn's defense. He stated that the Stevens, .410 shotgun was given to him by his father. Jones brought the shotgun to Missouri when he was living at Alcorn's house. He believed that the shotgun was in the gun safe in Jessica Jones' bedroom. Jones said that he had a conversation with Alcorn concerning Jones giving the shotgun to Jones' son. On cross-examination, Jones said he did not remember putting the shotgun in Alcorn's closet. Jones did not offer any testimony that he ever offered to sell the firearm to Alcorn. (Trial Tr. II, pp. 7 - 19)

After presentation of that evidence, the parties argued the case and the jury was instructed by this Court. The case was then submitted to the jury. After due deliberation, the jury returned with its verdict, finding Alcorn guilty on all the two charges made in the Indictment.

### D.    The Presentence Report.

A Presentence Investigation Report was prepared by United States Probation Officer Sherry L. Persinger-Miller. That report recommended that Alcorn's base offense level be set at 20, with two levels added for obstruction of justice, for a total offense level of 22. Alcorn had one felony conviction for Possession of a Controlled Substance in 1999 and one misdemeanor

conviction for Possession of Marijuana in 2008. Alcorn received two criminal history points for these convictions, resulting in a criminal history category of II. Alcorn's Guidelines range of imprisonment was 46 to 57 months. (P.S.R., ¶ 21 - 28, 31 - 35, 39, 62)

**E.     The Sentencing Hearing.**

On October 8, 2010, this Court conducted a sentencing hearing. Alcorn filed a motion for a new trial and objections to the P.S.R., but withdrew that motion and objections based on a sentencing agreement with the Government that each party would recommend a sentence of imprisonment of 27 months. (Trial Tr. II, p. 48, 49) Alcorn reserved his right to appeal the denial of his motion to suppress evidence and statements and to appeal any trial court ruling made during his trial. (Trial Tr. II, p. 50) This Court adopted the findings of the P.S.R., finding that Alcorn's total offense level was 22 and his criminal history category was II, resulting in a Guidelines range of 46 to 57 months. Alcorn did not pose any objection to those findings. (Trial Tr. II, pp. 52, 53) After allocution and argument, this Court sentenced Alcorn to a below-Guidelines term of imprisonment of 20 months on each count, to be served concurrently, to be followed by a period of supervised release of four years, and a $200 special assessment. (Trial Tr. II, pp. 56 - 61)

**F.     The Appeal.**

On October 15, 2010, Alcorn filed a notice of appeal. In that appeal, he raised three issues. In his first issue on appeal, Alcorn argued that this Court violated Alcorn's right to a unanimous verdict by the way the jury was instructed on the verdict directing instruction to the felon in possession of a firearm charge. Alcorn's second issue argued that this Court erred by not instructing the jury on the defense of entrapment by estoppel. Alcorn's third issue

contended that this Court erred by not granting Alcorn's motion for judgment of acquittal

on the grounds of entrapment. All of those appellate arguments were rejected by the May 13,

2011 decision of the Eighth Circuit in *United States v. Alcorn*, 638 F.3d 819 (8th Cir. 2011).

**G.      Petition for Post-Conviction Relief Pursuant to §2255.**

On June 27, 2011, Alcorn filed his Petition under 28 U.S.C. §2255, asking that this Court

set aside Alcorn's sentence. Alcorn set our several allegations of error.

## APPLICABLE LAW

**A.      NEED FOR EVIDENTIARY HEARING AND BURDEN OF PROOF**

28 U.S.C. §2255 provides, in pertinent part:

> Unless the motion and the files and records of the case conclusively show that the
> prisoner is not entitled to relief, the court shall . . . grant a prompt hearing thereon.

Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District

Court states:

> The motion, together with all the files, records, transcripts, and correspondence
> relating to the judgment under attack, shall be examined promptly by the judge to
> whom it is assigned. If it plainly appears from the face of the motion and any
> annexed exhibits in the prior proceedings in the case that the movant is not
> entitled to relief in the district court, the judge shall make an order for its
> summary dismissal and cause the movant to be notified.

When a petition is brought under Section 2255, the petitioner bears the burden of

establishing the need for an evidentiary hearing. In determining whether petitioner is entitled to

an evidentiary hearing the court must take many of petitioner's factual averments as true, but the

court need not give weight to conclusory allegations, self interest and characterizations,

discredited inventions, or opprobrious epithets. *United States v. McGill*, 11 F.3d 223, 225 (1st

Cir. 1993). A hearing is unnecessary when a Section 2255 motion (1) is inadequate on its face,

or (2) although facially adequate is conclusively refuted as to the alleged facts by the files and the records of the case. *Id.*, at 225-6. See also *United States v. Robinson*, 64 F.3d 403 (8th Cir. 1995) *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995).

When all the information necessary for the court to make a decision with regard to claims raised in a 2255 motion is included in the record, there is no need for an evidentiary hearing. *Rogers v. United States*, 1 F.3d 697, 699 (8th Cir. 1993). An evidentiary hearing is unnecessary where the files and records conclusively show petitioner is not entitled to relief. *United States v. Schmitz*, 887 F.2d 843, 844 (8th Cir. 1989); *Dall v. United States*, 957 F.2d 571, 573 (8th Cir. 1992).

**B.      INEFFECTIVE ASSISTANCE OF COUNSEL**

To prevail on a claim alleging ineffective assistance of counsel, the movant must satisfy the two-part test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). Under *Strickland*, the movant must first show that the counsel's performance was deficient. 466 U.S. at 687. This requires the movant to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. Secondly, the movant must demonstrate that the deficient performance prejudiced the defense so as "to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. The movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

The Eighth Circuit has described the two-fold test as follows: (1) counsel's representation fell below an objective standard of reasonableness; and (2) but for this ineffective assistance,

there is a reasonable probability that the outcome of the trial would have been different. *Rogers v. United States*, 1 F.3d 697, 700 (8th Cir. 1993). More recently the Eighth Circuit has described the *Strickland* test as follows: "Whether counsel's performance was in fact deficient and, if so, whether the defendant was prejudiced by the inadequate representation. If we can answer 'no' to either question, then we need not address the other part of the test." *Fields v. United States*, 201 F.3d 1025, 1027 (8th Cir. 2000).

When evaluating counsel's performance, the court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. Counsel's performance is considered objectively, and gauged "whether it was reasonable 'under prevailing professional norms' and 'considering all the circumstances.'" *Fields*, 201 F.3d at 1027, quoting *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2064-65. Counsel's challenged conduct is viewed as of the time of his representation. "And we avoid making judgments based on hindsight." *Fields*, 201 F.3d at 1027. A reviewing court's "scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.

## DISCUSSION

**Ground one.   Ineffective assistance of counsel.**
**Failure of counsel to object to the Indictment on the grounds that the Indictment did not charge the element of the quantity of drugs involved in the offense.**

Alcorn's Indictment charged two separate violations of federal statutes. The first count charged that Alcorn was a previously convicted felon in possession of a firearm that affected interstate commerce in violation of Title 18, United States Code, § 922(g)(1). The second count

charged that Alcorn manufactured marijuana in violation of Title 21, United States Code, § 841(a)(1). Count II did not list any quantity of marijuana that Alcorn allegedly manufactured. Alcorn contends that the Indictment was defective for failing to state a quantity of marijuana that he was charged with growing and that his attorney was ineffective for failing to object to the form of the Indictment.

In relevant part, Title 21, U.S.C. § 841(a) makes it a federal violation for any person:

(1) to *manufacture*, distribute, or dispense, or possess with the intent to manufacture, distribute, or dispense, a controlled substance; (emphasis furnished)

Notably, § 841(a)(1) does not require *any* minimum quantity of a controlled substance in order to charge an offense. Any amount of a controlled substance will suffice for an indictment. Marijuana is a Schedule I controlled substance pursuant to Title 21, U.S.C. § 812(c). Title 21 U.S.C. § 841(b) sets out the penalty provisions for various violations for different types of controlled substances.

With regards to marijuana, § 841(b)(1)(A)(vii) provides for a minimum term of imprisonment of ten years and a maximum of life for a person with no previous felony drug offense convictions who manufactures or distributes 1,000 kilograms or more of marijuana or who grows more than 1,000 marijuana plants. If that person manufactures or distributes over 1,000 kilograms of marijuana after sustaining a felony drug conviction their sentencing ranges change to a minimum of twenty years to a maximum of life. The same defendant who has two previous felony drug offense convictions must be sentenced to a mandatory term of life imprisonment. The only fact that changes for these different ranges is number of previous felony drug convictions that the person has sustained.

Title 21, U.S.C. § 841(b)(1)(B)(vii) provides that person with no previous felony drug convictions who manufactures or distributes 100 kilograms or more of marijuana or grows 100 or more marijuana plants is subject to a minimum term of imprisonment of five years, with a maximum term of forty years. If that person has one previous felony drug conviction the minimum term of imprisonment changes to ten years.

Title 21, U.S.C. § 841(b)(1)(C) sets out a penalty section for marijuana as a Schedule I controlled substance, but its application is for fifty kilograms to 100 kilograms of marijuana, since § 841(b)(1)(D) controls all marijuana violations under fifty kilograms. The maximum term of imprisonment under this section is twenty years, unless that person has a prior drug offense felony conviction. In that case, the maximum sentence is thirty years.

Title 21, U.S.C. § 841(b)(1)(D) provides that a person who manufactures or distributes less than fifty kilograms of marijuana is subject to a maximum term of imprisonment of five years, with no mandatory minimum sentence. If that person also has a previous felony drug conviction, the maximum term of imprisonment changes to ten years, again with no mandatory minimum sentence. This is the section applicable to Alcorn, as he was charged with an unspecified amount of marijuana that he manufactured and he had one previous felony drug conviction. Alcorn's maximum term of imprisonment under 21 U.S.C. § 841(b)(1)(D) was ten years. There was no mandatory minimum sentence applicable to Alcorn, since the Indictment did not specify any quantity of marijuana.

The law in this Circuit, and all other Circuits, is clear; the indictment need not charge the amount of drugs involved unless that quantity of drugs exposes the defendant to a higher range of punishment. *See United States v. Martinson*, 419 F.3d 749, 754 (8th Cir. 2005); *United States v.*

*Diaz*, 52 Fed.Appx. 810, 2002 WL 31809231, * 1, 2 (6th Cir. Mich) (holding that the indictment

charging the defendant with conspiring to distribute marijuana was sufficient without specifying

a quantity of marijuana involved since the quantity of marijuana involved in a sentencing under §

841(b)(1)(D) was not an element of the offense); *United States v. Hamlin*, 319 F.3d 666, 670 (4th

Cir. 2003) (holding that, because the defendant's indictment did not allege a specific quantity of

marijuana, the defendant's sentence could not exceed the statutory maximum penalty to be

imposed for distribution of an indeterminate amount of marijuana). As noted below, the relevant

case authority provides that, when a person is convicted of manufacturing an unstated amount of

marijuana, the default punishment provision is Title 21, U.S.C. § 841(b)(1)(D). This is the

punishment section that was actually used in Alcorn's case.

       In Alcorn's case, the amount of marijuana grown by him was not a element of the case

because the drug quantity did not increase his sentence. Alcorn is simply mistaken when he

asserts that a drug quantity must be pled and proven in a marijuana case. The only cases where a

quantity of marijuana needs to be pled or proven is when the Government is seeking to impose a

sentence with a higher minimum and maximum sentence; that is, for marijuana cases involving

offense conduct of more than fifty kilograms. If the Government does not specify a drug quantity

in a marijuana manufacturing case, the punishment must be pursuant to Title 21, U.S.C. §

841(b)(1)(D). This is exactly what happened in Alcorn's case.

       Alcorn states, in his Petition:

> Accordingly, an issue now presented in this case is whether *Apprendi* requires
> the government to allege and prove beyond some reasonable doubt drug
> quantities as elements of offenses since it uses the sentencing scheme of 841.
> The answer is clearly yes. (Alcorn's Petition; p. 11.)

Actually, the answer, as noted in the cases cited above, is clearly no, when the Government is only seeking to punish the defendant for the lowest statutory penalty that may be used without reference to any drug quantity. If the Government's proof would have involved Alcorn's offense conduct that involved 100 kilograms or more of marijuana, the Government would have been required to include that fact in the Indictment and prove it to the jury. However, since the Government was not seeking a penalty larger than that imposed by Title 21, U.S.C. § 841(b)(1)(D), the section for an unstated quantity of marijuana, the Government was not required to plead or prove any particular quantity of marijuana in order to secure a valid conviction.

Moreover, Alcorn provides absolutely no authority for his proposition that an indictment which charges a marijuana manufacturing offense punishable under § 841(b)(1)(D) must include a quantity of marijuana involved in the offense. Alcorn cites authority from cases where the Government attempted to use an enhanced statutory punishment where the amount of drugs involved actually was an element of the offense. But he does not cite any authority requiring pleading or proof of a drug quantity, to establish a conviction, for an offense punishable under § 841(b)(1)(D).

Alcorn cites *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348 (2000), for the proposition that "any element that serves to increase a penalty for a crime beyond the statutory maximum must be submitted to the jury and proved beyond a reasonable doubt." Alcorn's Petition; p. 11. However, Alcorn did not face any drug quantity calculation that increased his punishment. He was sentenced under Title 21, U.S.C. § 841(b)(1)(D), which is the only marijuana manufacturing violation that does not require a drug quantity to be charged in the

indictment and found by the jury. It applies to all unstated marijuana manufacturing charges, unless the Government specifies a larger quantity in the indictment. Alcorn did not face these larger quantities; therefore, the Government did not need to allege or prove a drug quantity.

In order to be successful in his claim, Alcorn would need to show supporting authority that a defendant may not be prosecuted for a marijuana manufacturing violation that is punishable under Title 21, U.S.C. § 841(b)(1)(D) when that indictment does not specify a drug quantity. No such case exists. Alcorn's contention in this issue is without merit.

Furthermore, Alcorn cannot establish that he was harmed by his alleged error. Alcorn's punishment range was set by reference to his conviction for being a felon in possession of a firearm. His base offense level was set at 20, with 2 levels added for obstruction, resulting in a Sentencing Guidelines range of punishment of 46 to 57 months imprisonment. (P.S.R. ¶ 21, 24, 62). Alcorn did not receive a separate base offense level for the marijuana conviction because those two convictions are grouped together, with the highest base offense level for the two offenses being used for the Guidelines calculation. (P.S.R. ¶ 20)

If Alcorn had only been convicted of the marijuana count of which he now complains, his base offense level would have been much lower. The P.S.R. reflects that the officers seized a total of six marijuana plants during the search. (P.S.R. ¶ 10) The P.S.R. did not set forth a weight for the loose marijuana found in Alcorn's home, but marijuana plants are given a weight of 100 grams per plant pursuant to the Sentencing Guidelines, § 2D1.1(c)(Note E). A drug quantity of 250 grams to 1,000 kilograms of marijuana yields a base offense level of 8, under the current Guidelines. U.S.S.G. § 2D1.1(c)(16). Since that base offense level is less than the amount set by the firearms charge, only the firearms base offense level was used. Alcorn is

complaining of the range of punishment for a charge that did not impact his sentence. The

firearms charge is the charge that resulted in a sentence of imprisonment. Alcorn has not been

prejudiced by any alleged error in that the marijuana conviction did not adversely affect his

sentence. Because he cannot show prejudice, Alcorn cannot sustain his burden of proof under

the *Strickland* standard required in order for him to obtain relief in this Petition.

**Ground two.  Ineffective Assistance of Counsel.**
        **Failure of counsel to object to the Indictment on the grounds that the
Indictment was missing the element of the penalty provision for a
violation of the statutes.**

In this ground, Alcorn contends that his Indictment was defective because it did not

include the penalty provision applicable to his federal violation. In essence, Alcorn contends that

the range of punishment is an element of the offense that the grand jury had to find and that must

be proven to the jury. Alcorn cites absolutely no authority for this proposition. His assertion is

contrary to the law in this and every other circuit.

An indictment is sufficient if it apprises the defendant of the elements of the offenses

charged, and enables the defendant to plead an acquittal or conviction in bar of future

prosecutions for the same offense. *United States v. Henderson*, 416 F.3d 686, 692 (8th Cir.

2005), citing *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887 (1974). There is no

requirement that the indictment also contain a statutory citation to a penalty provision. *Diaz*, *2;

*Webb v. United States*, 369 F.2d 530, 535-36 (5th Cir. 1966); *Goode v. United States*, 305 F.3d

378, 386 (6th Cir. 2002); *United States v. Brown*, 332 F3d 363, 369 (6th Cir. 2003). In Alcorn's

case, each count charged the elements of each offense. The elements for each offense were

defined by the jury instructions approved by this Court. The penalty for each offense is not an

element of the offense. In fact, the jury instructions provide that the jury is not to consider punishment. Alcorn is simply mistaken in his assertion that the Indictment was defective for failing to charge the penalty provision.

In his Petition, Alcorn cites *Ex Parte Bain*, 121 U.S. 1, 7 S.Ct. 781 (1887) for the proposition that "an indictment found by a grand jury is indispensable to the power of the court to try the defendant for a crime with which he was charged." Alcorn's Petition; p. 2. He also cites *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270 (1960) for his contention that "a court cannot permit a defendant to be tried on charges that are not made in the indictment against him." Alcorn's Petition; p. 2. Alcorn concludes with the argument that "when a indictment fail to set forth an essential element of a crime . . . the court has no jurisdiction to try a defendant under that count of the indictment," citing *United States v. Hooker*, 841 F.2d 1225, 1232-33 (4th Cir. 1988). Alcorn's Petition; pp. 2, 3. The problem with Alcorn's authority on this issue is that all three of these cases were overruled by the Supreme Court's holding in *United States v. Cotton*, 535 U.S. 625, 122 S.Ct. 1781 (2002). In *Cotton*, the defendant made the exact same argument as is advanced by Alcorn; that his indictment was defective for failing to include a drug quantity and that this defect deprived the district court of jurisdiction to hear the case. The Supreme Court held that "this Court some time ago departed from *Bain's* view that indictment defects are "jurisdictional." *Cotton*, 535 U.S. at 631, 122 S.Ct. at 1785. The Court continued by holding that "Insofar as it held that a defective indictment deprives a court of jurisdiction, *Bain* is overruled." *Id*. The cases cited by Alcorn in his petition for the proposition that a court does not have jurisdiction over a defective indictment have all been overruled by *Cotton*.

In conclusion, there were no missing elements in Alcorn's Indictment. This issue is

discussed merely to point out that Alcorn's authority on this issue has been overruled and may

not be relied upon.

**Ground three.   Ineffective Assistance of Counsel.**
**Failure of counsel to seek application of penalties for possession of a**
**"small" quantity of marijuana.**

In this issue, Alcorn appears to be arguing that he should have been punished under Title

21, U.S.C. §841(b)(4). Alcorn's brief; p. 12. § 841(b)(4) states:

> Notwithstanding paragraph (1)(D) of this subsection, any person who violates
> subsection (a) of this section by *distributing* a small amount of marijuana
> for no remuneration shall be treated as provided in section 844 of this title and
> section 3607 of Title 18. (Emphasis furnished.)

Section 844 allows for a civil penalty to be imposed against a person for possessing small

amounts of marijuana and can impose a one year sentence of imprisonment. However, the

application of this statute is clearly limited to those situations where the defendant distributes

marijuana. Alcorn was not charged with distribution of marijuana; he was charged with

manufacturing marijuana. § 844 is clearly not applicable to Alcorn's case.

Alcorn contends that §841(b)(4) is the applicable punishment section when there is no

quantity of marijuana specified in the Indictment. This issue has been resolved in other cases,

adversely to Alcorn's position. The defendant in *Hamlin* made exactly this argument. The

*Hamlin* court determined that, for a marijuana indictment that did not specify the quantity of

marijuana, the default punishment provision was § 841(b)(1)(D), which is the section that was

applied when Alcorn was sentenced. *Hamlin* stated: "We agree with the government that §

841(b)(1)(D) provides the applicable statutory maximum for marijuana violations where the

quantity of the drug is undetermined." *Hamlin*, 319 F.3d at 670. The *Hamlin* court went on to

cite other circuit's cases where the same result was reached. *See United States v. Bartholomew*, 310 F.3d 912, 925 (6th Cir. 2002); *United States v. Walker*, 302 F.3d 322, 324-25 (5th Cir., 2002); *United States v. Outen*, 286 F.3d 622, 628 (2nd Cir. 2002). As to Hamlin's claim of error, that court stated:

> We agree with the reasoning of the Second and Sixth Circuits that because *Apprendi* is concerned with the *facts* that a jury must decide, the proper baseline for default provision is not the provision with the lowest *penalty*, but rather the one which states a complete crime upon the fewest *facts*. (Citations omitted.) Clearly § 841(b)(1)(D) is the baseline provision because it states a complete crime upon the fewest facts. Section 841(b)(4) is a mitigating exception to the five-year statutory maximum found in § 841(b)(1)(D). The Supreme Court in *Apprendi* recognized that the existence of possible "facts in mitigation" does not affect the statutory maximum. (Citations omitted.) Similarly, here, the possibility that the defendant can "escape the statutory maximum" by showing that he distributed "a small amount of marijuana for no remuneration" does not affect the five-year statutory maximum set by § 841(b)(1)(D).

Other cases have come to the same conclusion, that § 841(b)(1)(D) is the default punishment provision for a guilty defendant whose indictment does not charge a quantity of marijuana. *See United States v. Campbell*, 317 F.3d 597, 603 (6th Cir. 2003); *United States v. Eddy*, 523 F.3d 1268, 1271 (10th Cir. 2008). Alcorn is simply mistaken that Title 21, U.S.C. § 841(b)(4) applies to his case. The overwhelming weight of authority holds that Alcorn was properly sentenced under Title 21, U.S.C. § 841(b)(1)(D) for manufacturing an unstated amount of marijuana.

**Ground four. Criminal violations committed by other officers.**

In this ground, Alcorn contends that the illegal actions of the Carter County sheriff should somehow be applied to result in his release. The only commonality that Alcorn's news reports have with his case is that both events occurred in Carter County. However, the Government did

not call any Carter County Sheriff's Office deputies as witnesses at Alcorn's trial. Moreover, there is no evidence that the Government was aware of any involvement by the Carter County Sheriff's Office in Alcorn's case. Alcorn merely presents newspaper articles of the Sheriff's arrest, and extrapolates from that his conclusion that "reversal is warranted in this case." Alcorn's Petition; p.15. The Government's witnesses were all Missouri State Highway Patrol officers. They conducted the entire investigation into Alcorn's case. The Carter County Sheriff was not involved in Alcorn's investigation or trial.

Alcorn admitted that he was growing marijuana during his trial. The only true issue was whether he was in possession of the firearm. Alcorn presents no evidence that would show how the Carter County Sheriff's Office had anything to do with the firearm at issue in this case. The burden of proof is on Alcorn to make that showing in a § 2255 petition. His failure to show causation, that the Sheriff's conduct had anything to do with the firearm in this case, is fatal to his claims in this Petition.

Alcorn fails to demonstrate how the Sheriff's issues affect his case, or the proof in his case, or how he was prejudiced. Since he has not shown prejudice as required by *Strickland*, Alcorn cannot succeed on this claim.

## CONCLUSION

For the foregoing reasons, Alcorn's § 2255 motion is **DENIED**.

**SO ORDERED** this 27th day of December, 2011.

STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE

-21-